IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSHUA STEWART, an individual,<br>　　　　　Plaintiff, | )<br>)<br>) |
| vs | ) Civil Action 09-725<br>) |
| NEW CASTLE SCHOOL DISTRICT,<br>　　　　　Defendant. | )<br>)<br>) |

REPORT AND RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the defendant's motion to dismiss the third amended complaint (Document No. 23) be denied.

II. Report:

Presently before the Court is a motion to dismiss the third amended complaint filed by defendant New Castle School District (the "School District"). For reasons discussed below, the defendant's motion to dismiss should be denied.

The plaintiff, Joshua Stewart, an adult African American male, has filed a third amended complaint, alleging that the School District discriminated against him because of his race in violation of Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d, et seq. ("Title VI").[1] In support of his discrimination claim, the plaintiff contends that during the school year of 2006-2007, when he was a sophomore at New Castle Area High School (the "High School"), the defendant falsely accused him of providing narcotics to a student in school

---

1. In pertinent part, Title VI provides that no person shall, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" covered by Title VI. 42 U.S.C. § 2000d.

after it conducted a flawed and biased investgation into the matter, and then expelled him from school without taking similar action against non-minority students also accused of the act.

Specifically, the plaintiff asserts that on February 27, 2007, New Castle police officers responded to a reported narcotics overdose by a student in the High School; that when police officers arrived, they found a female student, E.M., unconscious and unresponsive[2]; that on February 28, 2007, several students came forward and provided differing accounts of how E.M. received the narcotics, ranging from rumors that she received the narcotics from a friend who did not attend the High School, to statements that she purchased them from the plaintiff, but received them from A.M., a white female student; that school officials, including High School Principal John Sarandrea, improperly investigated the matter by failing to question the involvement of other students, notably A.M., after which they falsely accused the plaintiff of providing narcotics to E.M.; that the School District never accused A.M. of providing the narcotics at issue, even though the evidence against her was as strong as that against the plaintiff; and that the School District conducted its investigation in a manner that ensured the plaintiff would be accused in the incident and targeted him based upon his race.

The plaintiff also contends that on March 12, 2007, he and his mother were notified that he was suspended for ten days for violating the High School's drug policy, and that an expulsion hearing on the charges was scheduled for March 21, 2007; that prior to the expulsion hearing, Principal Sarandrea told the plaintiff's stepfather that the plaintiff would be expelled; that prior to being convicted on any charges, the High School announced over its public

---

2. E.M. was identified by name in the third amended complaint. However, since she was a minor, the Court will refer to her by initials in accordance with Local Rule 5.2(D)(2).

address system that the plaintiff was the student suspected of giving narcotics to E.M.; that on March 21, 2007, an expulsion hearing was held before the New Castle School Board, and based on the testimony of Mr. Sarandrea and two students, the plaintiff was expelled from the High School for violating school policy; and that upon information and belief, other non-minority students accused of similar charges were neither suspended, nor expelled. Having alleged that the School District discriminated against him in violation of Title VI, the plaintiff has invoked the Court's jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 1343(a)(4).

The defendant has moved to dismiss the third amended complaint pursuant to F.R.Civ.P. 12(b)(6). In support of its motion to dismiss, the defendant argues that the plaintiff's Title VI claim must be dismissed, because based on the record in this matter, he cannot establish a prima facie case of intentional race discrimination. It also argues that even if the plaintiff could establish a prima facie case, his claim would fail, because it had a legitimate non-discriminatory reason for expelling him. As alternate grounds for dismissing the plaintiff's Title VI claim, the defendant insists it is barred by the doctrines of res judicata and collateral estoppel.

In support of its motion to dismiss, the defendant has submitted several matters of public record for review which are discussed below. Our review of these documents does not convert the defendant's present motion to one for summary judgment, for a court may consider a matter of public record that a defendant attaches as an exhibit to a motion to dismiss. PBGC v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

The record shows that following the plaintiff's hearing on March 21, 2007, a panel of the School District's Board of Directors (the "School Board") issued an Adjudication and Disposition dated April 10, 2007, wherein it determined that "[o]n or about February 27,

2007, the Student [i.e., plaintiff], while on school property, distributed and sold a controlled substance to another student", which constituted a "violation of the School District's Student Discipline Policy".[3] The School Board found "the testimonies of John Sarandrea, Senior High Principal, [and students] E.P. and A.B. to be credible"[4], whereupon it expelled the plaintiff from the School District effective March 21, 2007.[5]

The plaintiff appealed the School Board's decision to expel him, but in an Opinion and Order dated August 24, 2007, the Court of Common Pleas of Lawrence County, PA upheld the plaintiff's expulsion.[6] In its Opinion, the Court of Common Pleas stated:

> This case involves a situation where Appellant [i.e., Plaintiff] sold thirteen pills to a female student, E.M. E.P., a New Castle High School student, testified at the hearing held by the school board that E.M. purchased the pills from Appellant during Spanish class, ...and ingested approximately six pills. E.P. identified the pills purchased by E.M. as 'Oxy.' E.P. explained that he recognized the pills as 'Oxy' because his cousin overdosed on Oxycontin, he saw them on the television show CSI, on the internet, and through information provided by Principal John Sarandrea. Furthermore, he stated that immediately following the transaction E.M. went to the bathroom and returned to class. During the ensuing conversation E.M. stated that she took six of the pills.
>
> A.M.B. testified that he saw E.M. after lunch and she looked very ill. E.M. proceeded to inform A.M.B. that she was feeling ill because she ingested Oxycontin, which she purchased during [class] from Appellant. E.M. was later rendered unconscious by the drugs.

---

3. See, defendant's Exhibit C at ¶¶ 9 and 11, attached to its brief in support of its motion to dismiss.

4. Id. at ¶ 10.

5. Id. at p. 3.

6. See, defendant's Exhibit A, attached to its brief in support of its motion to dismiss.

Ultimately, E.M. succumbed to the drugs and died in the hospital...[7]

In its Opinion upholding the plaintiff's expulsion, the Court of Common Pleas ruled that the school board provided the plaintiff with the requisite level of due process, as it furnished him with notice of a hearing, a hearing was held, and the plaintiff had counsel present with the ability to cross examine and provide witnesses.[8] Further, the Court of Common Pleas opined that the School District did not err in admitting the testimony of E.P. and A.M.B, as "the evidence provided was both relevant and probative".[9]

The record also shows that prior to initiating this action, the plaintiff filed a Title VI complaint against the School District with the United States Department of Education, Office for Civil Rights ("OCR"); in that complaint, the plaintiff alleged that the School District discriminated against him on the basis of race by treating him differently than a white student who violated the School District's drug policy by expelling him, but not the white student. OCR investigated the plaintiff's claim, and in a letter determination dated October 2, 2007, it determined there was insufficient evidence to support a finding of a Title VI violation.[10]

In its letter determination, OCR explained that in the course of its investigation, the plaintiff identified three white students who allegedly violated the School District's drug policy without being disciplined, but for two of the students, the plaintiff provided no factual support for his accusations; thus, OCR ruled that the plaintiff "did not provide a sufficient factual

---

7.   Id. at pp. 1-2.

8.   Id. at p. 4.

9.   Id.

10.  See, defendant's Exhibit B, attached to its brief in support of its motion to dismiss.

basis to support [his claim] that his treatment was different than that of these students."[11]

The third student identified by the plaintiff, a white female, was interviewed by OCR and referred to as "Student D" in its letter determination. OCR determined there was insufficient evidence to establish that Student D violated the School District's drug policy, as she submitted to a drug test, the results of which were negative, no witness could substantiate a drug transaction involving Student D and any other student, and no such evidence appeared on school surveillance video tapes.[12] Hence, OCR concluded that Student D was not disciplined because, unlike the plaintiff, there was no evidence showing she had violated the school's drug policy.[13]

As part of OCR's investigation into the matter, it had the School District provide it with a list of students who were found to have violated the school's drug and alcohol policy during the 2005-2006 and 2006-2007 school years. In its letter determination, OCR summarized its findings as follows:

> During the 2005-06 school year, four students were found to have violated the Policy. Two of the students were white (50 percent) and two were African American (50 perdent). The data indicated that two students (1 white and 1 African American) were expelled for 45 days for drug use. One black student was expelled for a year for drug possession, and one white student was expelled permanently for drug possession and solicitation.
>
> During the 2006-2007 school year, eight students, including the [plaintiff], were found to have violated the Policy. Six students were white (75 percent) and two were black (25 percent). The data indicated that one black student was expelled for 45 days

---

11. Id. at p. 2, n.1.

12. Id. at pp. 2-3.

13. Id. at pp. 4-5.

> for drug use, and as noted above, the [plaintiff] was expelled
> permanently for drug possession/transaction. The data also
> indicated that of the 6 white students, 2 were expelled for 45
> days for drug use, 3 were expelled the remainder of a semester
> for drug/alcohol possession, with one of those students receiving
> an additional 45-day expulsion for drug use, and 1 was expelled
> for a year for possession with intent to deliver.
> .......
> [T]he data ... fails to suggest a racial disparity with regard to the
> proportion of African American students found to have violated
> the District's Drug and Alcohol Policy or to the penalties applied
> to them.[14]

It is clear that a private cause of action under Title VI must be based on intentional discrimination. Alexander v. Sandoval, 532 U.S. 275, 280 (2001). In light of the findings of the Court of Common Pleas and OCR set forth above, the defendant argues that the plaintiff cannot establish a prima facie case of race discrimination.

A race discrimination claim under Title VI is analyzed under the three-stage shifting burden of proof articulated in McDonnell Douglas v. Green, 411 U.S. 792 (1973). See, Manning v. Temple University, 157 Fed. Appx. 509, 513 (3d Cir. 2005), citing Freeman v. Fahey, 374 F.3d 663, 666 (8th Cir. 2004). Under the McDonnell-Douglas framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination. Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

To establish a prima facie case of Title VI discrimination in the educational context, a plaintiff must show that: (1) he is a member of a protected class; (2) he suffered an adverse action at the hands of the defendant in pursuit of his education; (3) he was qualified to continue in the pursuit of his education; and (4) he was treated differently from similarly situated

---

14. Id. at pp. 3-5.

students who are not members of the protected class. Manning v. Temple Univ., 2004 WL 3019230, *5 (E.D.Pa., Dec. 30, 2004), citing Bell v. Ohio State Univ., 351 F.3d 240, 252-53 (6th Cir. 2003); accord, Underwood v. La Salle Univ., 2007 WL 4245737, *6 (E.D.Pa., Dec. 3, 2007).

The defendant insists that the plaintiff cannot establish the fourth prong of his prima facie case, as he was not treated differently from similarly situated students who were outside the protected class. In support of its position, the School District points to the finding of OCR which, as discussed above, investigated the plaintiff's claim of race discrimination and determined there was insufficient evidence to support a violation of Title VI.

Importantly however, OCR did not investigate the plaintiff's claim in the third amended complaint that the School District engaged in an intentionally faulty investigation to ensure he would be accused of the misconduct because of his race. Indeed, OCR did not determine whether, as the plaintiff alleges, the School District failed to investigate this matter in accordance with school policy; that on prior occasions, the School District conducted more thorough investigations in similar situations involving non-minority students; and that in this case, it failed to thoroughly investigate the involvement of non-minority students, such as A.M., in order to target the plaintiff as the culprit because of his race.[15]

The Third Circuit Court of Appeals has stated that in reviewing a Rule 12(b)(6) motion to dismiss, the Court should apply a two-part analysis. Fowler v. UPMC, 578 F.3d 203, 210 (3d Cir. 2009). "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11, citing Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

---

15. See, third amended complaint at ¶¶ 25-30.

"Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 211, quoting Iqbal, 129 S.Ct. at 1950.

Accepting as true the allegations in the third amended complaint, the plaintiff has stated a plausible claim for relief. That is, he has alleged sufficient facts to set forth a prima facie claim of intentional race discrimination.

As alternate grounds for dismissing the third amended complaint, the defendant insists it is barred by the doctrines of res judicata and collateral estoppel. We disagree.

Under the doctrine of res judicata, a party is precluded from litigating a matter that has already been adjudicated and is essential to the decision. Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir. 1988). The doctrine is viewed as a means of reducing the "costs and vexation of multiple lawsuits" and conserving judicial resources. Rider v. Com. of Pa., 850 F.2d 982, 989 (3d Cir. 1988), cert. denied, 488 U.S. 993 (1988) (citation omitted).

To determine if the third amended complaint is barred by res judicata, we must look to the law of the adjudicating state, i.e., Pennsylvania. See, O'Leary v. Liberty Mut. Ins. Co., 923 F.2d 1062, 1064 (3d Cir. 1991). Under Pennsylvania law, the doctrine of res judicata provides that:"[a]ny final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the same parties or their privies, on the same cause of action." Turner v. Crawford Square Apartments, III, L.P., 449 F.3d 542, 548 (3d Cir. 2006), quoting Balent v. City of Wilkes-Barre, 669 A.2d 309, 313 (Pa. 1995).

Under Pennsylvania law, res judicata will bar a subsequent suit if the two actions share an identity of: (1) the thing sued upon or for; (2) the cause of action; (3) the persons and

parties to the action; and (4) the capacity of the parties to sue or be sued.  Turner, supra, 449 F.3d at 548; O'Leary, supra, 923 F.2d at 1065.  Clearly, these criteria are not satisfied here.

    For instance, in his appeal to the Court of Common Pleas, the plaintiff challenged his expulsion for violating the High School's drug policy.  In contrast, the crux of the third amended complaint is that the School District abridged the plaintiff's Title VI rights by conducting a flawed and biased investigation into the incident to ensure that he, an African American, would be targeted as the culprit in E.M.'s overdose, rather than a similarly situated non-minority student, such as A.M.  Since the two actions do not share an identity of "the thing sued upon" or "the cause of action", res judicata does not bar the third amended complaint.

    Collateral estoppel refers to "the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided."  Migra v. Warren City School Dist. Bd. of Ed., 465 U.S. 75, 77 n.1 (1984).  To determine the preclusive effect of the plaintiff's prior state court action, we must look to the law of the adjudicating state, which was Pennsylvania.  See, Greenleaf v. Garlock, Inc., 174 F.3d 352, 357 (3d Cir. 1999).

    Under Pennsylvania law, collateral estoppel will bar a subsequent suit if: (1) an issue decided in a prior action is identical to one presented in a later suit; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to that action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.  Jones v. UPS, 214 F.3d 402, 405 (3d Cir. 2000); Rue v. K-Mart Corp., 713 A.2d 82, 84 (Pa. 1998).

    Collateral estoppel does not bar the plaintiff's present claim, because the issue

decided in his state court suit is not identical to the issue here.  As recited above, in his state court suit, the plaintiff appealed his expulsion from the High School for violating its drug policy. In the third amended complaint, the issue presented -- whether the School District violated Title VI by conducting a biased investigation into the incident to ensure the plaintiff would be targeted as the culprit because of his race -- was neither decided in the state court case, nor litigated there. As such, collateral estoppel does not bar the third amended complaint.

Therefore, it is recommended that the defendant's motion to dismiss the third amended complaint (Document No. 23) be denied.

Within the time specified in the Notice of Electronic Filing, any party may serve and file written objections to this Report and Recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

          Respectfully submitted,

          s/ ROBERT C. MITCHELL
          United States Magistrate Judge

April 13, 2010